OPINION *Page 2 
{¶ 1} Defendant-appellant Jason Harris appeals his conviction on one count of felonious assault, a felony of the second degree, with a firearm specification, one count of domestic violence, a felony of the third degree, and on one count of having a weapon under disability, a felony of the third degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant was indicted by the Richland County Grand Jury on one count of felonious assault, a felony of the second degree, with a firearm specification. Because he also had prior convictions from Mansfield Municipal Court for endangering children, Case No. 2000-CRB-05323, and assault, Case No. 2002-CRB-05423, involving family or household members, he was indicted for one count of domestic violence, a felony of the third degree. Finally, he was indicted on one count of having a weapon under disability, a felony of the third degree, due to a felony conviction for possession of crack cocaine, Case No. 2000-CR-710H.
 {¶ 3} The charges arose because of the shooting of appellant's brother, Floyon Harris, on May 20, 2006. A warrant was issued for the appellant's arrest. However, he was not located and taken into custody until nearly three months later on July 11, 2006. (2T. at 294-295). On July 28, 2006, his court appointed counsel filed a written motion for a bond reduction. The hearing was cancelled when appellant was indicted by the grand jury on August 10, 2007. He pled not guilty to the indictment on August 29, 2006. He was given a personal recognizance bond with electronic monitoring on September 1, 2006. The case was originally set for trial on October 2, 2006. The trial was rescheduled to December 4, 2006. However, on November 28, 2006, the trial judge issued a bench *Page 3 
warrant for appellant for failing to appear. On December 18, 2006, appellant was arrested on that warrant.
 {¶ 4} A final pretrial was held on December 28, 2006, which resulted in the case being set for trial on February 5, 2007. The case did not go forward on that date as his privately retained counsel moved to withdraw as counsel of record on January 31, 2007. The case was continued to March 19, 2007. Appellant's newly appointed attorney replaced appellant's privately retained counsel on February 26, 2007.
 {¶ 5} The case was scheduled for a change of plea on March 14, 2007. Appellant did not change his plea. At the oral request of appellant's newly appointed attorney, the case was continued for trial to April 30, 2007. A prosecutor pretrial was set for March 19, 2007 and a judge pretrial was set for April 10, 2007. New counsel filed a motion for bond reduction on April 9, 2007, and a final pretrial was held with the judge on April 10, 2007.
 {¶ 6} The magistrate conducted the hearing on defendant's motion for bond reduction on April 20, 2007. His written decision on bond was filed on April 25, 2007, recommending that his bond be reset to the original amount of $50,000.00 cash and electronic monitoring. He wrote, "The magistrate is willing to reconsider Mr. Harris' bond if he in fact changes his plea on 4-25 or if his 4-30 jury trial does not go forward." On April 27, 2007, the trial court scheduled a Change of Plea Hearing for May 5, 2007. The trial judge adopted the magistrate's decision on bond as the order of the court on April 30, 2007.
 {¶ 7} On May 1, 2007, appellant's attorney moved for transcripts of the preliminary hearing to be prepared at state's expense, which was granted on May 4, *Page 4 
2007. Another change of plea hearing was scheduled for May 9, 2007, and the court's docket notes, "DEFENDANT REFUSED TO CHANGE PLEA." On May 17, appellant's attorney filed a Motion to Dismiss, and the case was set for trial on June 25, 2007. A hearing on the motion to dismiss was set for June 13, 2007. The prosecutor responded to the motion to dismiss on May 24, 2007. Appellant's attorney filed a supplement to the defendant's motion to dismiss on June 22, 2007. The trial court overruled the motion on June 25, 2007. (1T. at 116).
 {¶ 8} A jury trial commenced on June 25 and 26, 2007. During the trial, the following facts were established.
 {¶ 9} In the early morning hours of May 20, 2006, Floyon Harris returned home to 912 King Street after being out celebrating the Memorial Day weekend. (2T. at 230-231). When he got back to the house, he was planning on going straight to bed. However, he discovered that his brother, Jason Harris, and Jason's girlfriend, Erica Perdue, were sleeping in his room. (2T. at 232).
 {¶ 10} A verbal confrontation ensued. Floyon woke Jason and Erica up and told his brother to "[g]et the hell out of [his] room." (2T. at 232-233). The argument spilled out of the upstairs bedroom and down the stairs, where the boys' mother Valerie Harris intervened. (2T. at 233-234). Floyon calmed down when his mother grabbed him and pulled him away from his brother. However, while he was attempting to pull her hands off his arm, Valerie was knocked off balance because she was wearing high heels at the time and had been drinking. (2T. at 234-235). Appellant thought Floyon pushed his mother down on purpose and became increasingly angry. Despite Valerie and Floyon's assurances that it was an accident, appellant would not let the matter go. (2T. at 235). *Page 5 
At some point during the argument, their brother-in-law, Kalil Smith, also woke up, came downstairs, and attempted to intervene. (2T. at 253-255).
 {¶ 11} Floyon walked away from appellant and stood in the kitchen in an attempt to calm the situation. (2T. at 235). Valerie Harris went outside to wait for appellant and his girlfriend so that she could drive them back to their apartment on Ashland Road. (2T. at 313, 325-326). While Floyon was standing in the kitchen, he heard appellant tell his girlfriend, Erica, to go upstairs and get his gun. Floyon attempted to make light of the situation by asking appellant why he needed the gun. (2T. at 235-236).
 {¶ 12} Floyon was still leaning against the kitchen counter when Erica returned with the gun and gave it to appellant, who was standing at the bottom of the stairs. At trial, Floyon testified that he just started to turn toward his brother when he saw a flash. (2T. at 236-237). He looked down in shock and saw a hole in his shirt and blood leaking from his side. He then fell to the ground. (2T. at 236-237). Appellant fled the residence after the shooting. Kalil Smith called 911. (2T. at 239; 258-259). When the police arrived, Floyon was laying on the floor, bleeding profusely and gasping for breath. (1T.at 154-155; 166-167). Patrolman Jason Bamman was able to take a taped statement from Floyon while paramedics were treating him. In that statement, Floyon told police that appellant had shot him and fled the residence. (1T. at 167-173). Kalil Smith also gave a taped statement regarding the events surrounding the shooting. (1T.at 175-176).
 {¶ 13} The gun used in the shooting, a Hi-Point 9mm, was recovered from the bushes outside 912 King Street several days after the shooting. (2T. at 296-298). The gun was submitted to the Ohio Bureau of Criminal Investigation ("B.C.I.") for testing. It *Page 6 
was found to be operable and matched the bullet and casing recovered from the scene. (2T. at 282-283; 298-299).
 {¶ 14} At trial, Andy Chappell, a firearms expert from B.C.I. testified that the gun was equipped with a thumb safety, a disconnector, and a magazine safety. (2T. at 286-287). While he testified that the magazine safety was unreliable because the grip was broken, the thumb safety which appellant claims he engaged functioned properly to prevent the gun from firing. (2T. at 287-288; 314; 320-321).
 {¶ 15} At the close of the State's case-in-chief, appellant's counsel raised a motion for acquittal on the felonious assault and domestic violence charges, alleging that the State could not prove he acted knowingly. (1T. at 302-303; 305). The motion was denied. (1T. at 307-308). Counsel also requested a jury instruction on recklessness based upon the same logic. (1T. at 308; 309). This motion was also denied by the trial court. (1T. at 308-309).
 {¶ 16} Appellant took the stand in his own defense. Appellant testified that he was sleeping on the floor of his old bedroom because he had no transportation to his house on Ashland Road. When he argued with his brother their mom broke it up, and that was that. Appellant testified that he told his girlfriend to get his "stuff," and when she returned without his gun, appellant went upstairs to retrieve the gun. (2T. at 324). The gun was with him because he had found it near a garbage can by an apartment on King Street, and he wanted to keep it because his house on Ashland Road had been burglarized. He had cocked it, but he did not know anything about guns, and thought it would be okay if the safety were on. (2T. at 314). After arguing with his brother, his mother was going to take him and his girlfriend to his house on Ashland Road. He got *Page 7 
the gun and hid it in his coat, because his mother would not give him a ride if he had a gun. (2T. at 315). Appellant claimed that the shooting was an accident. He testified that he did not pull the trigger, but if he did, it was not intentionally. (2T. at 325-326; 330). Appellant testified he did not intend to shoot his brother. "I accidentally shot the wrong person." (2T. at 316). On cross-examination, the prosecutor asked appellant about finding a loaded gun on the street. Appellant replied that he did not know if the gun had been loaded and that he did not know anything about guns in general. (2T. at 321). Appellant testified that he had the gun in his hand because he did not feel safe putting it in the waistband of his pants. (2T. at 323). Appellant further testified, "I had it in my hand. I had my coat over my hand. I'm leaving. My mom is waiting outside, her and my girlfriend." (2T. at 325). Appellant testified" . . . Then I come back downstairs. He said a couple of words, whatever. I said something back. And then I turned around and the gun went off. When I turned around, he was turning around. It could have been me." (2T. at 333). Appellant testified that he did not intentionally point the gun at his brother. (2T. at 334). Appellant claimed that he unintentionally shot his brother across the room, and fled about ten minutes later. (2T. at 326). Appellant further stated, "I guess I did pull the trigger, yeah. I pulled the trigger." (2T. at 326).
 {¶ 17} Prior to the conclusion of the defense case, appellant's counsel indicated that his client wished to call his mother, Valerie Harris. (2T. at 337). Upon the State's objection because Ms. Harris' name was not on the discovery provided by the defense, the trial court excluded her testimony. (2T. at 339). Thereafter, the defense rested.
 {¶ 18} The jury ultimately found the Appellant guilty of all three counts in the indictment as well as the firearm specification attached to the felonious assault charge. *Page 8 
The trial court sentenced the Appellant to four years on the felonious assault charge, to run consecutive to the three-year sentence on the firearm specification. On the domestic violence and weapon under disability charges, the trial court imposed minimum, one-year concurrent sentences.
 {¶ 19} Appellant now appeals, assigning as error:
 {¶ 20} "I. THE TRIAL COURT ERRED PREJUDICIALLY WHERE IT FAILED TO RULE ON THE DEFENDANT'S MOTION TO DISMISS PURSUANT TO THE SPEEDY TRIAL ACT WHEN DEFENDANT HAD A PRIMA FACIE CASE FOR DISCHARGE.
 {¶ 21} "II. THE TRIAL COURT ERRED PREJUDICIALLY WHERE IT EXCLUDED DEFENDANT'S MOTHER FROM TESTIFYING ON BEHALF OF THE DEFENDANT.
 {¶ 22} "III. THE VERDICT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE VICTIM OF THE SHOOTING TESTIFIED IT WAS AN ACCIDENT AND THERE WAS NO INDEPENDENT PROOF OF CRIMINAL INTENT OTHER THAN RECKLESSNESS IN WAVING A PISTOL ABOUT.
 {¶ 23} "IV. THE TRIAL COURT ERRED PREJUDICIALLY WHERE IT REFUSED TO INSTRUCT THE JURY ON THE ISSUE OF RECKLESSNESS AS REQUESTED BY THE DEFENSE.
 {¶ 24} "V. THE DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE NO REQUEST FOR AN INSTRUCTION FOR THE LESSER INCLUDED OFFENSE OF NEGLIGENT ASSAULT WAS REQUESTED." *Page 9 
 I. {¶ 25} In the First Assignment of Error, appellant argues the trial court erred in denying his motion to dismiss the indictment based upon a violation of his right to a speedy trial. We disagree.
 {¶ 26} "We begin by noting our lengthy history of Sixth Amendment jurisprudence, including the application of R.C. 2945.71. The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by theFourteenth Amendment. Section 10, Article I of the Ohio Constitution guarantees an accused this same right. State v. MacDonald (1976),48 Ohio St. 2d 66, 68, 2 O.O.3d 219, 220, 357 N.E.2d 40, 42. Although the United States Supreme Court declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. Barker v. Wingo (1972), 407 U.S. 514, 523, 92 S.Ct. 2182,2188, 33 L.Ed. 2d 101, 113.'" State v. Parker, 113 Ohio St.3d 207,2007-Ohio-1534 at ¶ 11. [Quoting State v. Hughes (1999),86 Ohio St. 3d 424, 425, 715 N.E.2d 540.].
 {¶ 27} As Chief Justice Moyer wrote in Brecksville v. Cook (1996),75 Ohio St.3d 53, 55-56, 661 N.E.2d 706:
 {¶ 28} "Ohio's speedy trial statute was implemented to incorporate the constitutional protection of the right to a speedy trial provided for in the Sixth Amendment to the United States Constitution and in Section 10, Article I of the Ohio Constitution. State v. Broughton (1991),62 Ohio St.3d 253, 256, 581 N.E.2d 541, 544; see Columbus v. Bonner (1981),2 Ohio App.3d 34, 36, 2 OBR 37, 39, 440 N.E.2d 606, *Page 10 
608. The constitutional guarantee of a speedy trial was originally considered necessary to prevent oppressive pretrial incarceration, to minimize the anxiety of the accused, and to limit the possibility that the defense will be impaired. State ex rel. Jones v. Cuyahoga Cty. Ct.of Common Pleas (1978), 55 Ohio St. 2d 130, 131, 9 O.O.3d 108, 109,378 N.E.2d 471, 472.
 {¶ 29} "Section 10, Article I of the Ohio Constitution guarantees to the party accused in any court `a speedy public trial by an impartial jury.' Throughout the long history of litigation involving application of the speedy trial statutes, this court has repeatedly announced that the trial courts are to strictly enforce the legislative mandates evident in these statutes. This court's announced position of strict enforcement has been grounded in the conclusion that the speedy trial statutes implement the constitutional guarantee of a public speedy trial.' (Citations omitted.) State v. Pachay (1980), 64 Ohio St. 2d 218,221, 18 O.O.3d 427, 429, 416 N.E.2d 589, 591.
 {¶ 30} "We have long held that the statutory speedy-trial limitations are mandatory and that the state must strictly comply with them.Hughes, 86 Ohio St. 3d at 427, 715 N.E.2d 540. Further, `the fundamental right to a speedy trial cannot be sacrificed for judicial economy or presumed legislative goals.' Id." State v. Parker, supra 2007-Ohio-1534
at ¶ 12-15.
 {¶ 31} In Ohio, the right to a speedy trial has been implemented by statutes that impose a duty on the state to bring a defendant who has not waived his rights to a speedy trial to trial within the time specified by the particular statute. R.C. 2945.71 et seq. applies to defendants generally. R.C. 2945.71 provides:
 {¶ 32} "(C) A person against whom a charge of felony is pending: *Page 11 
 {¶ 33} "(1) * * *
 {¶ 34} "(2) Shall be brought to trial within two hundred seventy days after the person's arrest.
 {¶ 35} "(D) A person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged, as determined under divisions (A), (B), and (C) of this section."
 {¶ 36} A speedy-trial claim involves a mixed question of law and fact.State v. Larkin, Richland App. No. 2004-CA-103, 2005-Ohio-3122. As an appellate court, we must accept as true any facts found by the trial court and supported by competent, credible evidence. With regard to the legal issues, however, we apply a de novo standard of review and thus freely review the trial court's application of the law to the facts. Id.
 {¶ 37} When reviewing the legal issues presented in a speedy-trial claim, we must strictly construe the relevant statutes against the state. In Brecksville v. Cook (1996), 75 Ohio St.3d 53, 57,661 N.E.2d 706, 709, the court reiterated its prior admonition "to strictly construe the speedy trial statutes against the state."
 {¶ 38} The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72, which provides:
 {¶ 39} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following: *Page 12 
 {¶ 40} "(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;
 {¶ 41} "(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
 {¶ 42} "(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
 {¶ 43} "(D) Any period of delay occasioned by the neglect or improper act of the accused;
 {¶ 44} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
 {¶ 45} "(F) Any period of delay necessitated by a removal or change of venue pursuant to law;
 {¶ 46} "(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
 {¶ 47} "(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion; *Page 13 
 {¶ 48} "(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending."
 {¶ 49} "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." State v. Riley, 162 Ohio App. 3d 730,2005-Ohio-4337, 834 N.E.2d 887, ¶ 19.
 {¶ 50} Appellant argues that the days that accrued prior to his rearrest on the bench warrant should be counted against his speedy-trial time.
 {¶ 51} In State v. Bauer (1980), 61 Ohio St.2d 83, 15 O.O.3d 122,399 N.E.2d 555, the Ohio Supreme Court held:
 {¶ 52} "There is no justification for a rule which could require a court to reschedule, within a few days after his rearrest, the trial of a defendant who has forfeited his appearance bond. Such a holding would not comport with the realities of congested court dockets which are typically set months in advance.
 {¶ 53} "* * *
 {¶ 54} "It is our conclusion that a defendant who fails to appear at a scheduled trial, and whose trial must therefore be rescheduled for a later date, waives his right to assert the provisions of R.C. 2945.71
through 2945.73 for that period of time which elapses from his initial arrest to the date he is subsequently rearrested."
 {¶ 55} Appellant argues that the Supreme Court's decision inBauer is incorrect. However, this Court cannot declare a decision by a superior court to be unconstitutional. Article IV of the Ohio Constitution designates a system of "superior" and "inferior" courts, each possessing a distinct function. The Constitution does not grant to a court of *Page 14 
appeals jurisdiction to reverse or vacate a decision made by a superior court. See, State, ex rel. Potain v. Mathews (1979), 59 Ohio St.3d 29,32, 391 N.E.2d 343, 345; OH. Const. art. IV, sec. 5; R.C. 2501.02. An inferior court has no jurisdictional basis to review the actions and decisions of superior courts.
 {¶ 56} In accordance with Bauer, supra, we find appellant waived his right to assert the speedy trial provisions of R.C. Chapter 2945 for the period of time between his initial arrest on July 11, 2006, and his rearrest on December 18, 2006. Accordingly, the 90-day statutory time period started over on December 18, 2006. State v. Counts, Delaware App. No. 06 CAA 050031, 2007-Ohio-117 at ¶ 54; State v. Craft (June 29, 1998), Licking App. No. 97CA00130. Accordingly, the State had ninety (90) days from December 18, 2006, in which to bring appellant to trial, i.e. March 19, 2007[1].
 {¶ 57} On March 15, 2007, the trial court filed a Judgment Entry granting defense counsel's oral request for a continuance occasioned by a change of defense counsel. The trial court re-scheduled the case for jury trial on April 30, 2007. However, on April 27, 2007 appellant requested a "Change of Plea Hearing" which the trial court set for May 9, 2007. After appellant declined to change his plea on that date, the trial court set appellant's jury trial to commence on June 25, 2007.
 {¶ 58} The continuances of March 15 and April 27, 2007 were not chargeable to the State pursuant to R.C. 2945.72 (C), (E) and (H). Both requests for continuances were at the request of appellant. In light of the foregoing, we find appellant's speedy trial time did not expire and the trial court did not err in denying his motion to dismiss.
 {¶ 59} Appellant's First Assignment of Error is overruled. *Page 15 
 II. {¶ 60} The Second Assignment asserts the trial court committed error in denying appellant's request to call his mother as a witness at trial. We disagree.
 {¶ 61} On June 18, 2007 appellant filed his response to the State's Request for Discovery. Appellant listed only himself as a potential witness. After the State had rested its case, appellant's trial counsel informed the trial court that, against the advice of counsel, appellant wished to testify in his own defense. (2T. at 311). In response to questioning by the Judge, appellant stated that he understood that he was rejecting his attorney's advice and informed the trial court that it was his desire to testify. (Id. at 312). After appellant testified, defense counsel again approached the bench. (2T. at 337). On this occasion, the following exchange occurred:
 {¶ 62} "MR. HARPER: Again, this is my first inkling that he wanted — this is my inkling he wanted today, the halfway mark today, that he wanted to take the stand himself, so I didn't call any — I mean, I didn't identify any witnesses. His mother is here. Would it be okay if I called her as upon cross-examination?
 {¶ 63} "MR. BOYD: Call the mother as if she's on cross?
 {¶ 64} "MR. HARPER: Yeah.
 {¶ 65} "MR. BOYD: I don't see why. I mean, I don't understand the point of it. She hasn't testified. I mean, if you want to call her as your witness.
 {¶ 66} "MR. HARPER: Okay. I'll just call her as my witness.
 {¶ 67} "MR. BOYD: But what's she going to say? I mean, I've had no discovery.
 {¶ 68} "MR. HARPER: I hadn't had any inkling that I was going to call
 {¶ 69} "THE COURT: She sat here and listened to him testify, right? *Page 16 
 {¶ 70} "MR. HARPER: No. She's outside. The mother has never been in here.
 {¶ 71} "THE COURT: Are you going to replay the tape and say is that you screaming? What's she going to testify to? I mean —
 {¶ 72} "MR. BOYD: From all the discussions I've had with her, she was outside of the house when the whole thing took place. That's why I didn't call her as a witness. So I don't — I don't know what she would testify to, so I guess I'm kind of curious as to —
 {¶ 73} "MR. HARPER: I didn't call her, number one.
 {¶ 74} "THE COURT: Why not?
 {¶ 75} "MR. HARPER: Why would I bring her and put her on the stand? To verify his story to the extent that —
 {¶ 76} "THE COURT: She's saying she wasn't there.
 {¶ 77} "MR. HARPER: When the shot was fired.
 {¶ 78} "THE COURT: She wasn't inside the house.
 {¶ 79} "MR. HARPER: When the shot was fired. She may have heard him tell Erica to go upstairs and get the stuff. I don't know. She may have heard or seen Erica come downstairs with his stuff and without the gun. She may have heard him say go get my gun.
 {¶ 80} "MR. BOYD: Well, I would object to her being called because she wasn't on a witness list. I wasn't planning on using her. I left it at that. I haven't had a chance to speak with her in any detail about his version of the offense.
 {¶ 81} "THE COURT: Is she going to be on the — I can't let her on the stand over the prosecutor's objection.
 {¶ 82} "MR. HARPER: I guess I rest my case." *Page 17 
 {¶ 83} (2T. at 337-339).
 {¶ 84} Every criminal defendant has a constitutional right to present a meaningful defense. Crane v. Kentucky (1986), 476 U.S. 683, 690,106 S.Ct. 2142. However, this right does not engender an unfettered entitlement to the admission of any and all evidence. U.S. v.Scheffer (1998), 523 U.S. 303, 308, 118 S.Ct. 1261.
 {¶ 85} The purpose of discovery rules is to prevent surprise and the secreting of evidence favorable to one party. Lakewood v. Papadelis
(1987), 32 Ohio St. 3d 1, 3, 511 N.E.2d 1138. The overall purpose is to produce a fair trial. Id.
 {¶ 86} ". . . Crim. R. 16 contemplates an informal step-that being the demand or written request for discovery of one party upon another party. It does not require court intervention. However, the fact that the court is not involved does not diminish the duty of the parties to comply with the rules at that point in the discovery process. As we have observed, Crim. R. 16(A) states: `Upon written request each party shall forthwith provide the discovery herein allowed. * * *' (Emphasis added.) The word `shall' has been consistently interpreted to make mandatory the provision in which it is contained, absent a clear and unequivocal intent that it receive a construction other than its ordinary meaning.Dorrian v. Scioto Conserv. Dist. (1971), 27 Ohio St.2d 102,56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus.
 {¶ 87} Crim. R. 16(E) (3) provides:
 {¶ 88} "Failure to comply. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in *Page 18 
evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 89} In deciding whether to impose sanctions pursuant to Crim. R. 16(E)(3), the trial court is vested with a certain amount of discretion to decide what, if any, sanction should be imposed under the circumstances. State v. Parson (1983), 6 Ohio St.3d 442, 445,453 N.E.2d 689. Thus, a reviewing court's inquiry should be limited to a determination of whether the trial court's actions constituted an abuse of discretion. Id.
 {¶ 90} In Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 5,511 N.E.2d 1138 the Ohio Supreme Court prescribed a series of factors which the trial courts should apply when considering witness preclusion as a sanction for discovery violations under Crim R. 16. The factors include: (1) surprise or prejudice to the state; (2) the impact of witness preclusion on the evidence to be presented and the outcome of the case; (3) the willfulness or bad faith of the discovery violation; and, (4) the effectiveness of less severe sanctions. Papadelis at 5,511 N.E. 2d 1138. A trial court is required to impose the least severe sanction consistent with maintaining the rules of discovery. Id. In the case at bar, appellant believes a less severe sanction than exclusion of his mother's testimony was mandated. We disagree. While not formally applying the Papadelis test, it is evident that the trial court did balance the State's interest against appellant's Sixth Amendment right to present a defense, as the Supreme Court requires. Papadelis at 5,511 N.E. 2d 1138.
 {¶ 91} The record indicates that the request to call the mother as a witness was made at the "eleventh hour," after the State had rested and after the appellant had *Page 19 
testified. These issues go to the first Papadelis factor, surprise or prejudice to the State. Id.
 {¶ 92} Appellant testified on his own behalf. This goes to the secondPapadelis factor, the preclusion of his mother's testimony was less likely to affect the outcome of the trial, as appellant did present a defense through his own testimony. Id.
 {¶ 93} The case against appellant had been pending for nearly one year prior to trial, and that it was somewhat incredible that his own mother had only recently been contacted by the appellant to testify. Further, appellant was not even sure what his mother would testify too. This goes to the third Papadelis factor, the indicia of bad faith or willfulness regarding the appellant's late request to have his mother testify.Id.
 {¶ 94} Under the circumstances of this case, no error pertains. "It is only when exclusion acts to completely deny defendant his or her constitutional right to present a defense that the sanction is impermissible." Papadelis at 5, 511 N.E.2d 1138.
 {¶ 95} We have reviewed the record, and we conclude that although the trial court did impose a strict sanction on appellant for failing to comply in a timely manner with the discovery, nevertheless, this Court cannot say that the trial court abused its discretion in doing so.State v. Mackey (June 30, 1994), Stark App. No. CA 9526.
 {¶ 96} Appellant's Second Assignment of Error is overruled.
 III. {¶ 97} In his Third Assignment of Error, appellant maintains that his conviction for felonious assault and domestic violence are against the manifest weight of the evidence. We disagree. *Page 20 
 {¶ 98} The Ohio Supreme Court recently addressed the standard of review for a criminal manifest weight challenge, as follows:
 {¶ 99} "The criminal manifest-weight-of-the-evidence standard was explained in State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541. In Thompkins, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386,678 N.E. 2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E. 2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387,678 N.E. 2d 541. `When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.' Id. at 387,678 N.E.2d 541, citing Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652.
 {¶ 100} Both C.E. Morris Co., 54 Ohio St.2d 279, 8 O.O.3d 261,376 N.E.2d 578, and Thompkins instruct that the fact-finder should be afforded great deference. However, the standard in C.E. Morris Co. tends to merge the concepts of weight and sufficiency. See State v. Maple
(Apr. 2, 2002), 4th Dist. No. 01CA2605, 2002 WL 507530, fn. 1; State v.Morrison (Sept. 20, 2001), 10th Dist. No. 01AP-66, 2001 WL 1098086. Thus, a judgment supported by "some competent, credible evidence going to *Page 21 
all the essential elements of the case" must be affirmed. C.E. MorrisCo. Conversely, under Thompkins, even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. State v.Thompkins, 78 Ohio St. 3d 380, 678 N.E.2d 541. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard. See Barkley v.Barkley (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989." State v.Wilson, 713 Ohio St. 3d 382, 387-88, 2007-Ohio-2202 at ¶ 25-26;865 N.E.2d 1264, 1269-1270.
 {¶ 101} However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v Thompkins, supra,78 Ohio St.3d at 387. (Quoting State v. Martin (1983), 20 Ohio App.3d 172,175, 485 N.E.2d 717, 720-721). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 102} In State v. Thompkins, supra, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; State v. Miller (2002), 96 Ohio St.3d 384,2002-Ohio-4931 at ¶ 38, 775 N.E.2d 498. *Page 22 
 {¶ 103} In the case at bar, appellant was convicted of felonious assault with a firearm specification. R.C. 2903.11(A) provides a definition of felonious assault:
 {¶ 104} "(A) No person shall knowingly do either of the following:
 {¶ 105} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 106} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance * * *"
 {¶ 107} Appellant was also found guilty of Domestic Violence. R.C.2919.25 states:
 {¶ 108} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 109} The victim was a family or household member, i.e. appellant's brother.
 {¶ 110} R.C. 2901.22 defines "knowingly" as follows:
 {¶ 111} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 112} Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." State v.Huff (2001), 145 Ohio App. 3d 555, 563, 763 N.E.2d 695. (Footnote omitted.) Thus, "[t]he test for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria." State v.McDaniel (May 1, 1998), Montgomery App. No. 16221, (citing State v.Elliott (1995), 104 Ohio App.3d 812, 663 N.E.2d 412). *Page 23 
 {¶ 113} Appellant does not dispute that the victim was shot in the left side with a handgun. The victim underwent surgery and remained hospitalized for six days. (2T. at 239-240). Accordingly, the State presented sufficient evidence that the victim suffered "serious physical harm." R.C. 2901.01(A) (5). Further, the State presented sufficient evidence that a "firearm" was used during the commission of the offenses. R.C. 2923.11; R.C. 2941.145.
 {¶ 114} Appellant's main argument is that the shooting was accidental. However, the record contains no evidence to support a claim of accident.
 {¶ 115} Criminal liability is predicated upon two components: the voluntary commission of a prohibited act and the requisite mental culpability or mens rea required for the offense. R.C. 2901.21. Accident is not an affirmative defense. State v. Poole (1973), 33 Ohio St. 2d 18,294 N.E.2d 888. Rather, it is a factual defense that denies that the accused acted with the degree of culpability or mens rea required for the offense, when that involves purposeful conduct. State v. Bayes (Dec. 29, 2000), Clark App. No. 00CA0032. By raising the defense of accident defendant denies that the act was intentional or purposeful. State v.Fears, 86 Ohio St. 3d 329, 715 N.E.2d 136, 1999-Ohio-111; State v.Taylor, Richland App. No. 2005-CA-0112, 2006-Ohio-4064 at ¶ 35.
 {¶ 116} Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id. State v. Taylor, supra at ¶ 37. *Page 24 
 {¶ 117} This court addressed a similar argument in State v.Rohaley (Dec. 28, 1998), Stark App. No. 1 998CA00092. InRohaley, the defendant sought an instruction on the defense of accident in a case involving aggravated vehicular homicide with a driving under the influence specification. Id. at 3. The trial court denied defendant's requested instruction. Id. at 7. In upholding the trial court's refusal to instruct on the defense of accident, we stated:
 {¶ 118} "In the instant case, the court had already instructed the jury on causation. The instruction on causation indicated that in order to convict, the jury had to find that appellant's act or admissions, in their natural and continuous sequence, directly produced Letitia Ciban's death. The accident instruction would have simply indicated that the jury could acquit if appellant's acts or admissions were not the natural and reasonably foreseen result of Letitia Ciban's death. Accordingly, the instruction on `accident' did not add anything new to the general charge. Appellant, therefore, has not demonstrated that the result of the proceeding would have been different had the instruction on the defense of accident been given to the jury." Id.
 {¶ 119} The record in the case sub judice indicates the trial court instructed the jury with the standard definition of causation. According to our decision, in Rohaley, a specific instruction on the defense of accident would not have added anything to the general instruction. .State v. Taylor, supra at ¶ 44.
 {¶ 120} "A fundamental premise of our criminal trial system is that `the jury is the lie detector.' United States v. Barnard, 490 F.2d 907,912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959,94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the *Page 25 
'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' Aetna Life Ins. Co. v. Ward,140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". United Statesv. Scheffer (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.
 {¶ 121} Although appellant cross-examined the witnesses and argued that he did not intend to shoot his brother, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 122} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 123} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury *Page 26 
did not create a manifest injustice by concluding that appellant was guilty of the crimes charged in the indictment.
 {¶ 124} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial.
 {¶ 125} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 126} In his Fourth Assignment of Error, appellant argues that the trial court erred in not instructing the jury on the issue of "recklessness." We disagree.
 {¶ 127} "[A]fter arguments are completed, a trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St. 3d 206, paragraph two of the syllabus. If a requested instruction contain a correct, pertinent statement of the law and is appropriate to the facts, the instruction must be included, at least in substance. State v.Nelson (1973), 36 Ohio St. 2d 79, paragraph one of the syllabus. However, the corollary of this maxim is also true. It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. Riley v. Cincinnati (1976),46 Ohio St. 2d 287, 75 O.O.2d 331, 348 N.E.2d 135; Murphy v. CarrolltonManufacturing Co. (1991), 61 Ohio St.3d 585, 591, 575 N.E.2d 828, 832. "In reviewing a record to ascertain the presence of sufficient evidence to support the giving of an * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction." Feterle v.Huettner (1971), *Page 27 28 Ohio St.2d 54, 275 N.E.2d 340, at syllabus; Murphy v. CarrolltonManufacturing Co., supra; State v. Coleman, 6th Dist. No. S-02-41, 2005-Ohio-318 at ¶ 12.
 {¶ 128} "Ohio law permits a trier of fact to consider three types of lesser offenses when determining a defendant's guilt: `(1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.' State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus, construing R.C. 2945.74 and Ohio Crim. R. 31(C)". Shaker Heights v. Mosely, 113 Ohio St. 3d 329, 332,2007-Ohio-2072 at ¶ 10, 865 N.E.2d 859, 862-863.
 {¶ 129} "Recklessness" is defined in R.C. 2901.22(C), which states :"(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."
 {¶ 130} In the case at bar, appellant does not argue that the trial court erred by not instructing the jury on a lesser-included offense, or an inferior degree of the indicted offense; rather appellant argues that the trial judge erred by not instructing the jury on the definition of "recklessness." However, as we noted in our disposition of appellant's Third Assignment of Error supra, in order to convict, the jury had to find that appellant's act or admissions, in their natural and continuous sequence, directly caused physical harm to the victim by means of a deadly weapon. In the case at bar, the undisputed evidence is that the appellant had retrieved a handgun and the victim was shot. In *Page 28 
order for the gun to fire, the trigger had to be pulled. The gun was in the hand of appellant at the time it discharged. It discharged in the direction of the victim. Appellant did not contend that he stumbled and, in an attempt to regain his balance, the gun went off. Nor did he argue that he fired the gun at the ground to scare the victim and the bullet ricochet striking the victim. Generally, courts presume that people intend the natural, reasonable and probable consequences of their voluntary actions. State v. Williams (1996), 74 Ohio St. 3d 569, 574,660 N.E.2d 724; Thomas at 217, 533 N.E. 2d 286; State v. Wright, 4th Dist. No. 01CA2781, 2002-Ohio-2781 at ¶ 24.
 {¶ 131} The record in the case sub judice indicates the trial court instructed the jury with the standard definition of causation. According to our decision, in Rohaley, supra a specific instruction on recklessness would not have added anything to the general instruction. .State v. Taylor, supra at ¶ 44.
 {¶ 132} We find no abuse of discretion in the trial court's decision not to instruct the jury regarding recklessness.
 {¶ 133} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 134} In his Fifth Assignment of Error appellant maintains he received ineffective assistance of appellate counsel because trial counsel failed to preserve the error of juror bias by advising appellant to enter a plea rather than attempting to seat a jury. We disagree.
 {¶ 135} The standard for reviewing claims for ineffective assistance of counsel was set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of State v. Bradley (1989), *Page 29 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel.
 {¶ 136} First, we must determine whether counsel's assistance was ineffective; i.e., whether counsel's performance fell below an objective standard of reasonable representation and volatile of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether the defense was actually prejudice by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. We apply theStrickland test to all claims of ineffective assistance of counsel, either trial counsel or appellate counsel. State v. Godfrey (Sept. 2, 1999), 5th Dist. No. 97CA0115.
 {¶ 137} The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Bradley at 143, quoting Strickland at 697. Accordingly, we will direct our attention to the second prong of the Strickland test.
 {¶ 138} "When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. See Strickland,466 U.S., at 690, 104 S.Ct. 2052 (counsel is `strongly presumed' to make decisions in the exercise of professional judgment). That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court `may have no way of *Page 30 
knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.' Massaro v. United States, 538 U.S. 500, 505,123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003). Moreover, even if an omission is inadvertent, relief is not automatic. The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight. See Bell, supra, at 702, 122 S.Ct. 1843;Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 91 L.Ed.2d 305
(1986); Strickland, supra, at 689, 104 S.Ct. 2052; United States v.Cronic, 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)."Yarborough v. Gentry (2003), 540 U.S. 1, 8, 124 S.Ct. 1, 6.
 {¶ 139} A decision regarding which defense to pursue at trial is a matter of trial strategy "within the exclusive province of defense counsel to make after consultation with his client." State v.Murphy, 91 Ohio St. 3d 516, 524, 2001-Ohio-0112. This court can only find that counsel's performance regarding matters of trial strategy is deficient if counsel's strategy was so "outside the realm of legitimate trial strategy so as `to make ordinary counsel scoff."`State v.Woullard, 158 Ohio App.3d 31, 813 N.E.2d 964, 2004-Ohio-3395, ¶ 39, quoting State v. Yarber (1995), 102 Ohio App.3d 185, 188,656 N.E.2d 1322. Further, the Ohio Supreme Court has recognized that if counsel, for strategic reasons, decides not to pursue every possible trial strategy, defendant is not denied effective assistance of counsel.State v. Brown (1988), 38 Ohio St. 3d 305, 319, 528 N.E.2d 523. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. State v. Clayton
(1980), 62 Ohio St.2d 45, 49, *Page 31 402 N.E.2d 1189, citing People v. Miller (1972), 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089; State v. Wiley, 10th Dist. No. 03AP-340, 2004-Ohio-1008 at ¶ 21.
 {¶ 140} The Ohio Supreme Court has recognized that "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."State v. Griffie (1996), 74 Ohio St.3d 332, 333, 658 N.E.2d 764.
 {¶ 141} At trial, appellant did not concede criminal negligence on his part. To the contrary, he attributed the shooting to an accident. Given appellant's testimony, the evidence presented at trial would not reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense. If the prosecution's evidence was believed, appellant was guilty of felonious assault. If appellant's testimony was believed, he was not guilty of any crime. As a result, he was not entitled to an instruction on negligent assault.
 {¶ 142} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record, that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel. *Page 32 
 {¶ 143} Appellant's Fifth Assignment of Error is overruled.
 {¶ 144} The judgment of the Court of Common Pleas for Richland County, Ohio is affirmed.
 Gwin, J., Hoffman, P.J., and Wise, J., concur *Page 33 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, The judgment of the Court of Common Pleas for Richland County, Ohio is affirmed. Costs to appellant.
[1] The ninetieth day would by March 18, 2006, but as this was a Sunday, the period would be extended to Monday, March 19, 2006. *Page 1