[Cite as *In re Martin*, 2010-Ohio-3155.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF THE | ) | CASE NO. 09 MA 117 |
| GUARDIANSHIP OF: | ) | |
| | ) | |
| DOMINIC L. MARTIN | ) | OPINION |
| | ) | |
| | ) | |

CHARACTER OF PROCEEDINGS:      Civil Appeal from the Court of Common
Pleas, Probate Division, of Mahoning
County, Ohio
Case No. 09 GI 28

JUDGMENT:      Affirmed.

APPEARANCES:

For Appellant:      Atty. David Betras
6630 Seville Drive
Canfield, Ohio 44406

For Appellee:      Atty. James B. Dietz
City Centre One, Suite 300
100 Federal Plaza East
Youngstown, Ohio 44503

JUDGES:

Hon. Cheryl L. Waite
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 29, 2010

WAITE, J.

{¶1} Appellant Rose Savich filed an application to become the guardian of

the person of her brother Dominic L. Martin. A competing prior application had been

filed by Angela Gilliland, another sister of the incompetent ward. The Mahoning County Court of Common Pleas, Probate Division, did not appoint either sister as guardian. Instead, the court appointed Family Services Agency as guardian of the person. Appellant argues on appeal that she was prevented from engaging in discovery by the issuance of a discovery protective order; that she should have been appointed guardian because she was nominated as guardian in a durable power of attorney; and that the court's decision was against the manifest weight of the evidence. Dominic Martin died shortly after Appellant's brief was filed in this appeal. The death of the ward terminated the guardianship, and any issues regarding the guardianship of the person of Mr. Martin are now moot. Appellant's arguments are overruled and the judgment of the trial court affirmed.

### History of the Case

{¶2} At the time of the initial probate court proceedings in this case, Dominic L. Martin was 77 years old. Dominic was a veteran of the Korean War. He was living in Veteran's Administration ("VA") housing in Brecksville, Ohio, and in other VA approved facilities in northeastern Ohio. After returning from the war, he developed mental health problems that required regular ongoing treatment. He received injections every other week for 30 years to control his mental health problems, including schizophrenia. He had also been in and out of VA hospitals and nursing homes over the past decade. He was declared a legal incompetent many years ago by the VA in administrative proceedings, but there had been no judicial determination

of competency prior to these proceedings. The VA had also appointed guardians to manage his finances.

{¶3} Dominic had two sisters, Rose Savich (age 78) and Angela Gilliland (age 76), and two brothers, Frank Martin and Tony Martin, all of whom live in Mahoning County. Rose Savich had been Dominic's "legal custodian" and "payee" (using VA terminology) from sometime in the year 2000 until July 2003, when Attorney Robert L. Christian took over the duties.

{¶4} The VA had uncovered some problems with the way Rose Savich was accounting for Dominic's income and expenses. The VA refused to allow Rose Savich to continue managing Dominic's finances. The VA appointed Attorney Christian as the legal custodian. The record indicates that the VA was paying for Mr. Martin's nursing home care and medical bills. Mr. Martin also received his pension as well as disability benefits. In addition, Dominic had approximately $160,000 in savings. Dominic received a special VA benefit called "aid and assistance" that Attorney Christian described as "very unusual." (Tr., p. 24.) Rose Savich herself had been receiving between $350 and $800 per month from the VA to reimburse her for costs related to visiting and caring for Dominic.

{¶5} Attorney Christian pointed out that the VA is not required to abide by rulings outside of the VA regarding guardianships and payees. The VA had already decided that Rose Savich was not suitable as a legal custodian for Dominic.

{¶6} A hearing was held before a magistrate on April 7, 2009, but due to failure of service on some of the parties, it was continued.

**{¶7}** On April 17, 2009, Appellant filed a notice of deposition of Angela Gilliland. On April 27, 2009, Angela Gilliland filed a motion for protective order to prevent the deposition from taking place. The motion was sustained on April 29, 2009. Appellant filed a response and a motion to vacate the protective order on May 11, 2009. The motion to vacate was overruled as part of the court's later ruling on Appellant's objections to the May 26, 2009, magistrate's decision.

**{¶8}** The April 7, 2009, hearing was continued to May 11, 2009. At the hearing, the parties agreed that Dominic was incompetent and needed a guardian. The parties agreed that Attorney Robert L. Christian would be suitable as guardian of the estate. Appellant and Angela Gilliland proceeded to hearing on their applications to become guardian of the person.

**{¶9}** Rose and her children (Nancy Savich and Susan Savich) testified that Rose had been the primary caretaker of Dominic for decades, and that other relatives ignored and neglected him. Rose's testimony indicated considerable enmity with her sister Angela. Rose was confused about bills she submitted to the VA when she was legal custodian and payee of Dominic. She was reluctant to admit that there were nursing homes in Mahoning County that would be acceptable to the VA. She seemed determined to place Dominic in a facility near Columbus so that Rose's children, rather than other relatives, could be near him.

**{¶10}** Angela testified that she tried to become Dominic's guardian many years earlier but was opposed by Appellant. Angela used to pay all of his bills, but this task was gradually taken over by Appellant. In the autumn of 2008 Angela

discovered that Appellant was not paying Dominic's bills or caring for him properly. Angela felt guilty about Dominic's living conditions, so she filed an application to become his guardian. Angela believes Appellant lied to her about Dominic's care and finances. She testified that she talked with Dominic's nurses every day and was prepared to take every step necessary to care for her ailing brother.

{¶11} Frank Martin, Dominic's brother, testified that he took care of Dominic: he gave him his medication, took care of his house and yard, and drove him everywhere he needed to go, including to Brecksville every two weeks for 30 years to receive injections. He testified that he did not apply to be his guardian because he thought it was more proper for his older sisters to do it. He testified that Rose wanted to isolate Dominic from the rest of the family. (Tr., p. 90.) He testified that Rose "brainwashed" Dominic and wanted to isolate him in Columbus so that the rest of family could not easily visit him. He stated that the only information he received about Dominic in recent years was from Angela. He recommended that Angela be appointed guardian.

{¶12} The magistrate issued a decision on May 26, 2009. The magistrate found by clear and convincing evidence that Dominic Martin was incompetent and in need of a guardian. The magistrate found that there were many disputes and disagreements between the competing family members that were detrimental to the ward. The magistrate appointed Family Services Agency as the guardian of the person and Attorney Robert Christian as guardian of the estate. On June 9, 2009,

Appellant filed objections to the magistrate's decision. On July 18, 2009, the probate judge overruled the objections. This timely appeal was filed on July 7, 2009.

{¶13} The only brief filed in this appeal was filed by Appellant Rose Savich on September 14, 2009. On October 21, 2009, Dominic's guardian Karla Edwards filed a motion to terminate the guardianship along with a copy of Dominic's death certificate. Dominic died on September 27, 2009. The trial court filed a judgment entry on October 22, 2009, terminating the guardianship of the person of Dominic Martin.

## ASSIGNMENTS OF ERROR

{¶14} "The Trial Court erred in not vacating its Protective Order dated April 29, 2009 and erred in prohibiting Rose Savich from engaging in any discovery prior to the hearing on the guardianship application."

{¶15} "The Trial Court erred in appointing Family Service Agency as Guardian of the person when Rose Savich was nominated as guardian in a General Power of Attorney executed by Dominic L. Martin."

{¶16} "The Trial Court's decision in denying the Application of Rose Savich as Guardian of the Person was in error for the reason that such decision was contrary to the manifest weight of the evidence."

{¶17} Appellant contends that she should have been appointed guardian of the person of her brother, Mr. Dominic Martin. The record shows that Mr. Dominic Martin is now deceased. The death certificate and notice of death are part of the

record. Thus, the issue on appeal is moot because the guardianship ended upon the death of the ward.

{¶18} "Upon the death of the ward, the guardianship terminated." *William Hicks, M.D., Inc. v. Duke* (Nov. 4, 1997), 10th Dist. No. 97APG06-797, *1. "Death of the ward terminates all duties and powers upon the part of the guardian." *Simpson v. Holmes* (1922), 106 Ohio St. 437, 140 N.E. 395, paragraph one of the syllabus. "It is well-settled that the death of the ward terminates any guardianship proceedings by operation of law. The guardian's duties and powers end upon the ward's death." *In re Guardianship of Mogul* (April 30, 2002), 11th Dist. No.2001-T-0083, *2. "According to longstanding decisions of the Ohio Supreme Court, the death of the ward terminates, by operation of law, any guardianship proceeding and the personal representative of the deceased then takes over the former incompetent's affairs." (Emphasis omitted.) *In Matter of Guardianship of Ward* (Sept. 29, 1986), 12th Dist. No. CA86-02-004, *2.

{¶19} The issue in this appeal is whether the probate court correctly appointed Family Services Agency rather than Appellant as guardian of the person of Dominic Martin. On Mr. Martin's death on September 27, 2009, the guardianship ceased and there is nothing left to decide regarding who should be his guardian. Any arguments that Appellant could make with respect to the court's appointment of a guardian of the person of Dominic Martin are addressed to a moot issue and cannot constitute a basis for relief on appeal.

**{¶20}** Even if the issue was not moot, Appellant's arguments do not raise any reversible error in this matter. First, the trial court concluded that guardianship proceedings were expedited, non-adversarial proceedings and that depositions are not normally a part of such proceedings. The trial court was essentially correct that guardianships are non-adversarial proceedings to which many of the usual rules of procedure and evidence do not apply. *In re Guardianship of Thomas*, 148 Ohio App.3d 11, 2002-Ohio-1037, 771 N.E.2d 882; *In re Guardianship of Stancin*, 10th Dist. No. 02AP-637, 2003-Ohio-1106. The purpose of guardianship hearings is to gather information in order to determine the best interests of the prospective ward. *In re Estate of Bednarczuk* (1992), 80 Ohio App.3d 548, 553, 609 N.E.2d 1310. The probate court has plenary power over guardianship proceedings, including the power to appoint guardians on the court's own motion, and to proceed ex parte. R.C. 2111.02. Thus, the very nature of the proceeding weighed against Appellant's attempt to conduct a deposition.

**{¶21}** Second, the record indicates that Angela Gilliland filed a Civ.R. 26(C) motion for protective order to prevent the deposition from taking place, and any error in granting that motion is reviewed only for abuse of discretion. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶23. Civ.R. 26(C) allows a party or interested person to motion the court for a protective order to prevent "annoyance, embarrassment, oppression, or undue burden or expense". It was certainly within the trial court's discretion to grant a protective order prohibiting

the deposition when it was clear that both applicants for the guardianship would be testifying at trial, and when time was of the essence in the appointment process.

**{¶22}** With respect to Appellant being named in a general power of attorney as a reason to appoint her as guardian, the court determined that the power of attorney was not properly executed and was not binding on the court. R.C. 2111.121 allows any person to nominate another person in a durable power of attorney to be guardian of the person, estate or both. Nevertheless, to be a valid nomination, the durable power of attorney must be executed as prescribed in the guardianship statutes. R.C. 2111.121(A) states: "To be effective as a nomination, the writing shall be signed by the person making the nomination in the presence of two witnesses; signed by the witnesses; contain, immediately prior to their signatures, an attestation of the witnesses that the person making the nomination signed the writing in their presence; and be acknowledged by the person making the nomination before a notary public." Appellant's general power of attorney was neither signed nor acknowledged in the presence of a notary. Thus, it was not a valid nomination of a guardian under the statute.

**{¶23}** That said, if the power of attorney had been valid, the court was still not bound by it. A person nominated in a properly executed power of attorney must also be examined by the court. The court will determine "if the person nominated is competent, suitable, and willing to accept the appointment." R.C. 2111.121(B). Thus, it would have been within the probate court's discretion to reject Appellant as

the guardian even if she had been properly nominated in a power of attorney. *In re Guardianship of Hafner* (Nov. 24, 1993), 9th Dist. No. 16073.

**{¶24}** With respect to the question regarding the manifest weight of the evidence, the record reflects that Appellant was not the proper person to be Dominic's guardian. The antipathy between Appellant and her other family members was made very clear at the magistrate's hearing. Appellant had already been rejected by the VA as Dominic's legal custodian. Rose's testimony at the guardianship hearing showed that she was not necessarily acting in the best interests of Dominic but in serving the needs of her own children when finding a nursing home for Dominic. Rose and Angela both revealed their ill will toward one another at the hearing. The trial court concluded that these family squabbles were detrimental to Dominic, thus requiring a more neutral guardian instead of a family member. A trial court's decision will not be reversed as being against the manifest weight of the evidence if some competent, credible evidence supports it. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus. Furthermore, a probate court's decision to appoint a guardian is only reviewed for abuse of discretion. *In re Guardianship of Schneider*, 156 Ohio App.3d 469, 2004-Ohio-1378, 806 N.E.2d 610, ¶16. The record supports the trial court's judgment in appointing a non-family member as guardian, and there was no abuse of discretion in this case. All three of Appellant's assignments of error are overruled.

**{¶25}** In conclusion, we overrule Appellant's arguments in this appeal because they relate to the guardianship of the person over a ward that died after this

appeal was filed. The guardianship has terminated and there is no relief that can be granted with respect to anyone who formerly wished to become the guardian of the person. Even if we would consider the merits of Appellant's arguments, none are supported by the record, nor do they indicate any abuse of discretion on the part of the trial court. The judgment of the trial court is hereby affirmed.

Vukovich, P.J., concurs.

DeGenaro, J., concurs.