[Cite as *Harris v. Belvoir Energy, Inc.*, 2017-Ohio-2851.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103460**

# GARY HARRIS

PLAINTIFF-APPELLEE

vs.

# BELVOIR ENERGY, INC.

DEFENDANT-APPELLANT

**JUDGMENT:**
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-816379

**BEFORE:** E.T. Gallagher, J., Keough, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** May 18, 2017

**ATTORNEYS FOR APPELLANT**

Eric D. Valente
Jeffrey W. Krueger
J.W. Krueger & Associates, L.L.C.
P.O. Box 360135
Cleveland, Ohio 44136


**ATTORNEYS FOR APPELLEE**

Charles H. Cooper
Rex H. Elliott
Barton R. Keyes
Bradley A. Strickling
Cooper & Elliott, L.L.C.
2175 Riverside Drive
Columbus, Ohio 43221

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Belvoir Energy, Inc. ("Belvoir"), appeals from an order of the common pleas court compelling Belvoir to submit allegedly confidential trade secret materials to plaintiff-appellee, Gary Harris ("Harris"), in the course of discovery. Belvoir raises the following assignment of error for our review:

> The trial court erred in ordering Belvoir to produce unredacted copies of its cash receipts ledger for the period 2004 through 2015.

**{¶2}** After careful review of the record and relevant case law, we reverse the trial court's judgment and remand for proceedings consistent with this opinion.

## I. Procedural History [1]

**{¶3}** Harris has conducted business as Group Maintenance, Inc., Asset Management Trust, Heartbreak Hotel Inc., and Jefferson Investment X, Ltd. On June 18, 2004, Harris negotiated a Gas Pipeline Lease Gas Transportation Agreement (the "Agreement") with lessee, Lenox-Morgan Pipeline, L.L.C. ("LMP"), that permitted LMP to transport natural gas through a pipeline in Northeast Ohio owned by Harris. The Agreement identified Harris's business entities as the lessor. Pursuant to its express terms, the Agreement required the lessee to pay the lessor the greater of $850 per month or 42 cents per MCF[2] transported through the pipeline on a triple net basis. The Agreement provided that the lease shall expire on August 31, 2015.

---

[1] The parties submitted proposed statements of the evidence or proceedings to the trial court and the court submitted its statement to this court pursuant to App.R. 9(C) on June 28, 2016.

[2] MCF is an abbreviation denoting a thousand cubic feet of natural gas.

**{¶4}** On October 29, 2013, Harris filed a complaint against Belvoir, setting forth causes of action for breach of contract, unjust enrichment, and accounting.[3] In the complaint, Harris alleged that "Belvoir Energy, Inc. is the successor and assignee of all legal rights, interests and obligations under the Agreement" and "succeeded and was assigned those rights, interests and obligations from Belvoir Oil & Gas, L.L.C. and/or [LMP]." The complaint further alleged that Belvoir breached the terms of the lease agreement by paying the monthly minimum of $850 despite transporting substantial quantities of natural gas through its pipeline for years without paying the higher rate of 42 cents per MCF rate owed under the agreement. Thus, Harris contends that Belvoir was unjustly enriched and improperly reaped profits by "failing to pay the 42 cent MCF rate owed to plaintiff for years * * * and by failing to account for the number of natural gas MCF's transported throughout plaintiff's pipeline."

**{¶5}** On November 26, 2013, Harris sought all documents reflecting any revenue received by LMP, Belvoir, or Belvoir Energy, in any way related to the pipeline subject to the Agreement and to the natural gas transported through that pipeline (the "cash receipts ledgers").

**{¶6}** On August 26, 2015, the trial court conducted a telephone pretrial conference to resolve a discovery dispute related to the cash receipts ledgers. On August 28, 2015,

---

[3] Harris brought this case in his individual capacity because of the Cuyahoga Court of Common Pleas judgment in Harris's civil divorce case, *Harris v. Harris,* Cuyahoga C.P. Dom. Rel. No. 02-DR-288442.

the trial court ordered Belvoir to provide the court with unredacted copies of the cash receipts ledgers for in camera review.

{¶7} On August 31, 2015, the trial court conducted a second telephone pretrial conference with the parties during which they expressed their respective opinions as to whether the cash receipts ledgers were discoverable. At the conclusion of the pretrial telephone conference, the trial court ordered Belvoir to provide Harris with the unredacted cash receipts ledgers that were submitted for in camera review.

{¶8} Belvoir now appeals from the court's August 31, 2015 order compelling discovery.

## II. Law and Analysis

## Trade Secrets and Privileged Information

{¶9} In its sole assignment of error, Belvoir argues the trial court erred by ordering Belvoir to produce unredacted copies of its cash receipts ledger for the period 2004 through 2015.

{¶10} An order compelling the production of allegedly privileged documents to an opposing party is a final appealable order. *Csonka-Cherney v. ArcelorMittal Cleveland, Inc.*, 8th Dist. Cuyahoga No. 97998, 2014-Ohio-836, ¶ 10, citing *Pinnix v. Glassman, Inc., d.b.a. Marc's*, 8th Dist. Cuyahoga Nos. 97998 and 97999, 2012-Ohio-3263, ¶ 8; *Cobb v. Shipman*, 11th Dist. Trumbull No. 2011-T-0049, 2012-Ohio-1676, ¶ 34-35; R.C. 2505.02(A)(3) and 2505.02(B)(4). While this court is required to review whether the challenged documents were privileged, we note that arguments concerning whether the

challenged discovery order was "overly broad and not reasonably calculated to lead to discovery of admissible evidence" are not ripe for review. *See Ramun v. Ramun*, 7th Dist. Mahoning No. 08 MA 185, 2009-Ohio-6405, ¶ 47-48; *Block Communications, Inc. v. Pounds*, 6th Dist. Lucas No. L-13-1224, 2015-Ohio-2679, ¶ 42 ("Ohio courts have held that a trial court's determination as to the relevancy of discovery materials is not a final, appealable order."). Accordingly, we need not reach a determination as to the relevancy of the information sought by Harris.

{¶11} A trial court "possesses broad discretion over the discovery process," and, therefore, appellate courts "generally review a trial court's decision regarding a discovery matter only for an abuse of discretion." *MA Equip. Leasing I, L.L.C. v. Tilton*, 10th Dist. Franklin No. 12AP-564, 2012-Ohio-4668, ¶ 13. Nevertheless, an abuse of discretion standard "is inappropriate for reviewing a judgment based upon a question of law, including an erroneous interpretation of the law." *Id.* In general, the issue as to whether information sought in discovery is confidential and privileged is a question of law that is reviewed de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Medina v. Medina Gen. Hosp.*, 8th Dist. Cuyahoga No. 96171, 2011-Ohio-3990, ¶ 9.

{¶12} In this case, the issue presented is whether the information sought by Harris in discovery constitutes protected trade secrets pursuant to R.C. 1333.51. Accordingly, our determination as to whether portions of the cash receipts ledger are trade secrets is de novo. *See Pounds*, 6th Dist. Lucas No. L-13-1224, 2015-Ohio-2679, ¶ 44.

**{¶13}** Initially, we note that there is no merit to Harris's contention that Belvoir has waived its trade secret argument "by failing to raise it in the trial court." After careful consideration, we find that it is clear from the trial court's App.R. 9(C) statement that the issues currently raised in this case were the subject of the August 26, 2015 and August 31, 2015 telephone pretrial conferences. The purpose of the conferences was to determine whether or not Harris was entitled to the unredacted contents of Belvoir's cash receipts ledgers. Thus, Belvoir's trade secret arguments are not being raised for the first time on appeal.

**{¶14}** On appeal, Belvoir concedes that Harris is entitled to certain information contained in the cash receipts ledgers for the period 2004 through 2015, including "information identifying the location of the meters where the readings were taken within the Lenox-Morgan Pipeline, the meter readings reported, and the amount of gas for which the customer was billed and/or submitted payment." Belvoir argues, however, that it was entitled to redact certain trade secrets contained in the cash receipts ledgers, including (1) the identity of Belvoir's customers, (2) the prices those customers are charged for the gas purchased from and/or transmitted by Belvoir, (3) the amounts those customers paid Belvoir, and (4) information unrelated to the Lenox-Morgan Pipeline. Belvoir submits that Harris is a competitor in the transmission of natural gas, and that access to Belvoir's trade secrets would "provide Harris with significant savings" and "would be harmful to Belvoir, its business, and its business relations with its customers."

**{¶15}** R.C. 1333.61(A) defines a trade secret as follows:

(D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

(1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

(2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.C. 1333.61(D). The Ohio Supreme Court has established the following "six-factor test for determining whether information constitutes a trade secret pursuant to R.C. 1333.61(D)."

(1) The extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*State ex rel. Plain Dealer v. Ohio Dept. of Ins.*, 80 Ohio St.3d 513, 524-525, 687 N.E.2d 661 (1997), citing *Pyromatics, Inc. v. Petruziello*, 7 Ohio App.3d 131, 134-135, 454 N.E.2d 588 (8th Dist.1983).

{¶16} Moreover, "[i]n a discovery dispute, those asserting that the materials sought constitute trade secrets that are privileged from discovery bear the burden of establishing trade secret status." *Arnos v. MedCorp, Inc.*, 6th Dist. Lucas No. L-09-1248,

2010-Ohio-1883, ¶ 20. "Conclusory statements as to trade secret factors without supporting factual evidence are insufficient to meet the burden of establishing trade secret status." *Id.* at ¶ 28, citing *State ex rel. Besser v. Ohio State Univ.*, 89 Ohio St.3d 396, 404, 732 N.E.2d 373 (2000). In addition, the party claiming to possess a trade secret must demonstrate that he or she has taken "some active steps to maintain its secrecy in order to enjoy presumptive trade secret status." *Id.*

{¶17} In this case, the arguments concerning whether portions of the challenged cash receipts ledgers contained trade secrets occurred off the record during two telephone pretrial conference hearings. Presumably, Belvoir attempted to satisfy its burden of establishing trade secret status during those conference calls. However, because the conversation occurred behind closed doors, the record before this court is void of any evidence pertaining to whether or not the documents in question contain trade secrets. Furthermore, this court is incapable of making such a determination merely by reviewing the cash receipts ledgers submitted on appeal. Without a context for the items listed therein, this court cannot perform a meaningful review of whether the documents at issue contain trade secrets under R.C. 1333.61(A). Under the totality of the circumstances presented in this case, we find the trial court's failure to hold an evidentiary hearing on the record was reversible error. *See Gibson-Myers & Assocs. v. Pearce*, 9th Dist. Summit No. 19358, 1999 Ohio App. LEXIS 5010 (Oct. 27, 1999).

{¶18} We recognize that the proverbial bell of the trial court's discovery judgment may not be able to be unrung in this matter. Nevertheless, Belvoir's sole assignment of

error is sustained.  On remand, the trial court is ordered to create a record of the inspection and the court's findings and to determine whether the documents constitute trade secrets under Ohio law.

**{¶19}** Judgment reversed and remanded for proceedings consistent with this opinion.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
MARY J. BOYLE, J., CONCUR