[Cite as *In re E.S.*, 2020-Ohio-4843.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   |                                |
|--------------------------|---|--------------------------------|
|                          |   | JUDGES:                        |
| IN THE MATTER OF: E.S.   | : | Hon. William B. Hoffman,P. J.  |
|                          | : | Hon. W. Scott Gwin, J.         |
|                          | : | Hon. Patricia A. Delaney, J.   |
|                          | : |                                |
|                          | : |                                |
|                          | : | Case No. 20 CA 00008           |
|                          | : |                                |
|                          | : |                                |
|                          | : | *NUNC PRO TUNC* O P I N I O N  |

CHARACTER OF PROCEEDING:      Civil appeal from the Perry County Court of Common Pleas, Juvenile Division, Case No. T.C. 2018 F 201

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      October 7, 2020

APPEARANCES:

For – Appellee

JESSICA MONGOLD
MONGOLD LAW OFFICES
123 South Broad Street, #206
Lancaster, OH 43130
*Gwin, J.,*

For - Appellant

ANGELA MILLER
258 Starkling Lane, S.
Jupiter, FL 33458

{¶1} Appellant-father, R.S. ["Father"] appeals the March 6, 2020 Judgment Entry of the Perry County Court of Common Pleas, Juvenile Division, which terminated his parental rights with respect to his minor child and granted permanent custody of the child to appellee, Perry County Children Services ["PCCS"].

*Facts and Procedural History*

{¶2} E.S., born July 19, 2017, is the biological son of Father. PCCS removed the minor child from his home on August 23, 2018. PCCS filed a Motion for Ex Parte Order for Emergency Shelter on August 24, 2018. At the full hearing on the Motion for Ex Parte Order for Emergency Shelter held August 24, 2018, the Court found the removal was necessary and proper and granted temporary custody of the minor child to PCCS. Father did not appear at the hearing on the Motion for Ex Parte Order. Father was incarcerated from June 3, 2018 through sometime in September 2018. T. at 43-44; 48. The trial court entered a "Denial" on Father's behalf and scheduled a trial date for September 19, 2019. [Docket Entry No. 3].

{¶3} Father failed to appear on September 19, 2018. The trial court again entered a denial of the allegations and scheduled an adjudicatory hearing date for October 31, 2018. [Docket Entry No. 5]. On December 11, 2018, the trial court filed a "Notice of Hearing" that scheduled the adjudicatory hearing for January 9, 2019. [Docket Entry No. 7].

{¶4} At the January 9, 2019 hearing, the trial court entered an admission to neglect on behalf of both parents when they failed to appear. T. at 4; Docket Entry No. 8. The trial court found E.S. to be a neglected child and continued the temporary order of custody with PCCS.

{¶5} On August 21, 2019, the trial court conducted an annual review hearing. At that hearing, the court again found that it was in the best interest of E.S. to continue temporary custody with PCCS.

{¶6} On November 6, 2019, PCCS filed a motion for appointment of a Guardian Ad Litem (GAL) and a motion for permanent custody (M.P.C.). The motion alleged that permanent custody was in the best interest of the child and that at least one of the five circumstances in R.C. 2151.414(B)(1) existed. On December 31, 2019, the trial court sua sponte appointed counsel to represent Father. [Docket Entry Nos. 19 & 20].

{¶7} The trial on the M.P.C. was originally scheduled for January 29, 2020. Father appeared with his court-appointed counsel on the trial date and obtained a continuance. The trial on the M.P.C. was rescheduled for February 26, 2020. The matter proceeded to trial on February 26, 2020. Only Father appeared with counsel at the trial.[1] Father was transported from the STAR program for the trial. T. at 4-5.

{¶8} Caseworker Pam Hartley testified the child was removed from the home because he was found wandering in the street on two occasions. Additionally, when children services arrived at the home they found a lack of food, bed bugs, roaches, and five dogs living at the property. At the home were maternal grandparents, Father and Mother, and two other sons of the grandfather. T. at 11. Drug usage by Father was an additional concern. T. at 10; 15.

---

[1] Another child, B.K. was also mentioned in the case but is not the child of Father. Both mother and maternal grandparents chose not to contest permanent custody.

{¶9} Father signed the case plan on November 20, 2018. On that date, Father indicated he wanted to work with Perry County Children Services. T. at 12. The case plan identified concerns with the parents' drug usage, housing, and lack of supervision.

{¶10} Pam Hartley testified that Father did not comply with any component of his case plan. Father was removed from the case plan on February 26, 2019 due to his noncompliance. Father has not had any contact with the minor child since August 23, 2018.

{¶11} Pam Hartley testified that she attempted contact with Father at his residence on November 5, 2018, December 10, 2018, January 28, 2019, January 29, 2019, February 25, 2019, February 26, 2019, February 28, 2019, March 25, 2019, and April 19, 2019. On one occasion, Ms. Hartley was informed that Father was incarcerated. T. at 13.

{¶12} Father testified that he was incarcerated during much of the time and that a temporary protection order was in place preventing him from having contact with the Mother or the home. Father testified that in 2019 he was incarcerated for eight of the twelve months. T. at 38. He testified that if any mail was sent to the home it was never forwarded to him. Father testified that he sent letters to PCCS. On one occasion, two PCCS employees visited him at the jail "to get him to sign papers" but they would not discuss the case plan. T. at 53. Father has never spoken to the GAL appointed to his case. T. at 64.

{¶13} Father testified that he completed drug and alcohol assessment through Hopewell and the STAR program and he submitted to random drug screens. However, nothing was forwarded to PCCS. Father claimed that he completed a mental health

assessment and had certificates showing completion of some parenting classes. He testified that he was currently participating in parenting classes, Alcoholics Anonymous, Narcotics Anonymous and that he had obtained a kitchen job through the STAR program.

{¶14} Finally, caseworker Hartley was called by PCCS as a rebuttal witness. Hartley stated that she had never received a letter from Father and did not believe anyone else with the agency had either.

{¶15} At the conclusion of the trial, both parties waived closing arguments and the court took the matter under advisement. On March 6, 2020, the court issued its decision granting PCCS permanent custody of E.S.

*Assignments of Error*

{¶16} Father raises two Assignments of Error,

{¶17} "I. APPELLANT WAS DENIED DUE PROCESS WHEN THE TRIAL COURT FAILED TO PROPERLY SERVE HIM WITH A COPY OF THE ADJUDICATORY AND DISPOSITIONAL ORDER ISSUED ON JANUARY 9, 2019.

{¶18} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW AND COMMITTED PLAIN ERROR IN FAILING TO FOLLOW R.C. 215135(B), R.C. 2151.352, AND JUV. R. 29(D)."

I.

{¶19} In his First Assignment of Error, Father argues that because the trial court failed to serve him with copies of the adjudicatory and dispositional orders issued in his case in accordance with Civ R 58(B), the 30-day period for filing an appeal raising errors in the adjudicatory and/or dispositional phases has never commenced.

**Standard of Appellate Review.**

{¶20} Father's argument centers on an issue of law, not the discretion of the trial court. "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of Civil Rules of Procedure and Appellate Rules of Procedure, which are questions of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**Issue for appeal:** *Whether the trial court properly endorsed upon the judgment entry the required "direction to the clerk to serve upon all the parties * * * notice of the judgment and its date of entry upon the journal" pursuant to Civ.R. 58(B), and/or whether the juvenile court's docket contains an indication that Father was ever served with notice.*

{¶21} Civ.R. 58(B) provides,

When the court signs a judgment, the court shall endorse thereon a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal. Within three days of entering the judgment upon the journal, the clerk shall serve the parties in a manner

prescribed by Civ.R. 5(B) and note the service in the appearance docket. *
* * The failure of the clerk to serve notice does not affect the validity of the judgment or the running of the time for appeal except as provided in App.R. 4(A).

{¶22} App.R. 4, provides,

**(A) Time for Appeal.**

*(1) Appeal From Order That Is Final Upon Its Entry.* Subject to the provisions of App.R. 4(A)(3), a party who wishes to appeal from an order that is final upon its entry shall file the notice of appeal required by App.R. 3 within 30 days of that entry.

* * *

*(3) Delay of Clerk's Service in Civil Case.* In a civil case, if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) and 4(A)(2) begin to run on the date when the clerk actually completes service.

{¶23} The Ohio Supreme Court has held,

For civil cases, App.R. 4(A) requires the notice of appeal to be filed within thirty days of "the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in [Civ.R.] 58(B)." App.R. 4(A) thus contains a tolling provision that applies in civil matters when a judgment has not been properly served on a party according to Civ.R. 58(B).

Civ.R. 58(B) requires the court to endorse on its judgment "a direction to the clerk to serve upon all parties * * * notice of the judgment and its date of entry upon the journal." The clerk must then serve the parties within three days of entering judgment upon the journal. "The thirty-day time limit for filing the notice of appeal does not begin to run until the later of (1) entry of the judgment or order appealed if the notice mandated by Civ.R. 58(B) is served within three days of the entry of the judgment; or (2) service of the notice of judgment and its date of entry if service is not made on the party within the three-day period in Civ.R. 58(B)." *Whitehall ex rel. Fennessy v. Bambi Motel, Inc.* (1998), 131 Ohio App.3d 734, 741, 723 N.E.2d 633, 638.

*In re: Anderson,* 92 Ohio St.3d 63, 70-71, 2001-Ohio-131, 748 N.E.2d 67. The Supreme Court in *Atkinson v. Grumman Ohio Corp.* 37 Ohio St.3d 80, 523 N.E.2d 851(1988) specified that service should be by the clerk of courts; and it subsequently determined that actual knowledge by counsel of the judgment entry in the absence of reasonable notice from the clerk of courts was insufficient to begin the time running for appeal. *Clermont County Transportation Improvement District v. Gator Milford,* 141 Ohio St.3d 542, 2015-ohio-241, 26 N.E.3d 806, syllabus. *Accord, State ex rel. Sautter,* 117 Ohio St.3d 465, 2008-Ohio-1444, 884 N.E.2d 1062, ¶16; *Steel v. Lewellen,* 5th Dist. Fairfield Nos. 95 CA 53, 95 CA 54, 1996 WL 362915(May 16, 1996).

{¶24} In the case at bar, the trial court never endorsed upon the adjudicatory and dispositional judgment entries that required "direction to the clerk to serve upon all the parties * * * notice of the judgment and its date of entry upon the journal" pursuant to Civ.R. 58(B). Moreover, the juvenile court's docket contains no indication that Father was

ever served with notice. Therefore, the time for filing a notice of appeal never began to run because the trial court failed to comply with Civ.R. 58(B). Therefore, Father's appeal in this case was timely filed under App.R. 4(A). *In re: Anderson,* 92 Ohio St.3d 63, 71, 2001-Ohio-131, 748 N.E.2d 67.

{¶25} PCCS concedes, "The Court did not endorse upon the judgment entered January 19, 2019 a "direction to the clerk to serve upon all parties not in default for failure to appear notice of the judgment and its date of entry upon the journal" as mandated by Civ.R. 58(B). Further, there is no indication in the appearance docket that the clerk served the parents with notice of the judgment as Civ.R. 58(B) requires...Appellee agrees that Appellant can raise the issues identified in his second assignment of error." *Appellee's Response to Merit Brief of Appellant,* filed Jul 20, 2020 at 9.

{¶26} Father's First Assignment of Error is sustained.

II.

{¶27} In his Second Assignment of Error, Father maintains that 1). The trial court violated Juv.R. 29 when it entered an "admission" on Father's behalf that the child was neglected; 2). The dispositional; hearing was not held within ninety days of the filing of the complaint in violation of R.C. 2151.35(B), and 3). Father was not timely appointed counsel. Because we find Father's second issue dispositive we shall only address that issue.

**Standard of Appellate Review.**

{¶28} Father's argument centers on an issue of law, not the discretion of the trial court. In other words, Father contends that whether the ninety day requirement for holding a dispositional hearing contained in R.C. 2151.35(B) is mandatory is a question

of law. "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.*, 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6. Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**Issue for Appeal:** *Whether the court on its own motion was required to dismiss the complaint because the dispositional hearing was not held within ninety days of the filing of the complaint as required by R.C. 2151.35(B)(1).*

{¶29} R.C. 2151.35 provides, in relevant part,

(B)(1) If the court at an adjudicatory hearing determines that a child is an abused, neglected, or dependent child, the court shall not issue a dispositional order until after the court holds a separate dispositional hearing. The court may hold the dispositional hearing for an adjudicated abused, neglected, or dependent child immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing. The dispositional hearing

may not be held more than thirty days after the adjudicatory hearing is held. The court, upon the request of any party or the guardian ad litem of the child, may continue a dispositional hearing for a reasonable time not to exceed the time limits set forth in this division to enable a party to obtain or consult counsel. The dispositional hearing shall not be held more than ninety days after the date on which the complaint in the case was filed.

If the dispositional hearing is not held within the period of time required by this division, the court, on its own motion or the motion of any party or the guardian ad litem of the child, shall dismiss the complaint without prejudice.

{¶30} Juv.R. 34 contains essentially the same language. *In re K.M.,* Oh. Sup. Ct. Case Nos. 2018-1331, 2018-1375, 2018-1376, 2018-1377, 2018-1379, 2018-1380, and 2018-1381, 2020-Ohio-995(Mar 19, 2020), ¶17.[Hereinafter referred to as *In re: K.M.].*

{¶31} In *In re: K.M.* the Ohio Supreme Court held,

We hold that R.C. 2151.35(B)(1) imposes a mandatory deadline requiring a juvenile court to dismiss a case without prejudice if the court fails to conduct a dispositional hearing within 90 days of the filing of a complaint alleging that a child is abused, neglected or dependent. And our holding applies with equal force to Juv.R. 34(A), which contains language essentially identical to that in R.C. 2151.35(B)(1).

2020-Ohio-995, ¶31. The Court further rejected any notion of implied waiver by a party who fails to cooperate,

To avoid this result, the Fifth District concluded that both mothers implicitly waived their right to a 90-day disposition. In *In re K.M.*, the court

of appeals suggested that R.H.'s failure to cooperate with children services' investigation required a delay in the proceedings for the juvenile court to obtain more information. In *In re D.T.* and the other five related cases, after the magistrate denied B.S.'s motions to dismiss, B.S. requested that the magistrate set the dispositional hearing for a future date, and the court of appeals construed that request as a waiver. *The statutory language is explicit, however, in requiring dismissal after the expiration of the 90-day period. In the face of such language, there can be no implicit waiver of the 90-day limit.*

2020-Ohio-995, ¶26 (emphasis added). Finally, the Supreme Court rejected any argument that dismissal would create a hazardous situation for the children or leave the children in limbo as the process starts anew,

Finally, the court of appeals in its opinions and children services in its briefs point to the adverse consequences that would result from construing the 90-day deadline in R.C. 2151.35(B)(1) as mandatory. The Fifth District opined that the dismissal of cases before their final disposition would require either that children be returned to a potentially risky home situation or that a new complaint be filed to begin the process all over again.

We acknowledge these valid concerns. But the dismissal rule here reflects the General Assembly's weighing of a countervailing interest—the fundamental right of a parent to raise one's own children. It is not uncommon that children and parents are left in legal limbo for months and even years while waiting for juvenile courts to process their cases. *Davis*

at 528, 705 N.E.2d 1219 (Moyer, C.J., dissenting). In *In re K.M.*, the magistrate did not hold a dispositional hearing until 107 days after the filing of the complaints even though R.H.'s attorney expressly stated at the end of the adjudicatory hearing that R.H. was ready to proceed directly to the dispositional hearing to avoid delay. In *In re D.T.* and the cases involving his siblings, the juvenile-court magistrate did not begin to conduct the dispositional hearing until 187 days after the filing of the complaints, and the court did not enter the final dispositions until 339 days after the filing of the complaints.

To alleviate such delays, the General Assembly crafted a solution that balances the rights of parents with the interests of protecting children— it provided for dismissal of a complaint *without prejudice*, which allows an agency to refile a new complaint that very same day and marshal its evidence if it still has concerns about a child's welfare. We acknowledge the burden that a mandatory 90-day deadline in R.C. 2151.35(B)(1) may impose on the already-strained dockets of the juvenile courts. But regardless of the policy concerns raised by dismissal of the complaint, our duty is to apply the statute as written.

2020-Ohio-995, ¶ 28-30.

{¶32} In the case at bar, the complaint was filed August 24, 2018. The dispositional hearing was held on January 9, 2019. Thus, the dispositional hearing commenced 138 days after the complaint was filed.

{¶33}  Because we have found this issue to be dispositive, we find the remaining issues raised in Father's Second Assignment of Error to be moot.

{¶34}  Father's Second Assignment of Error is sustained.

{¶35}  We therefore reverse the judgment of the trial court terminating Appellant-Father R.S.'s parental rights with respect to his minor child E.S. and remand this case to the juvenile court to enter an order of dismissal of the complaint against the Appellant-Father R.S. without prejudice.  Because Mother did not appeal from the trial court's decision, our decision does not alter the termination of Mother's parental rights with respect to the minor child E.S.


By Gwin, J.,

Hoffman, P.J., and

Delaney, J., concur