**[Cite as *State v. Hammond*, 2023-Ohio-3551.]**

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                        |   | JUDGES:                          |
|------------------------|---|----------------------------------|
| STATE OF OHIO          | : | Hon. W. Scott Gwin, P.J.         |
|                        | : | Hon. William B. Hoffman, J.      |
| Plaintiff-Appellee     | : | Hon. Craig R. Baldwin, J.        |
|                        | : |                                  |
| -vs-                   | : |                                  |
|                        | : | Case No. 2023 CA 00018           |
| JUSTIN M. HAMMOND      | : |                                  |
|                        | : |                                  |
| Defendant-Appellant    | : | OPINION                          |

CHARACTER OF PROCEEDING:     Criminal appeal from the Licking County
                             Court of Common Pleas, Case No. 2022
                             CR 00707

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      September 29, 2023

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JENNY WELLS                           BRIAN A. SMITH
Prosecuting Attorney                  BRIAN A. SMITH LAW FIRM, LLC
BY: KENNETH W. OSWALT                 123 South Miller Road, Suite 250
Assistant Prosecutor                  Fairlawn, OH 44333
20 South Second Street
Newark, OH 43055

*Gwin, P.J.*

**{¶1}** Defendant-appellant Justin M. Hammond ["Hammond"] appeals his conviction and sentence after a jury trial in the Licking County Court of Common Pleas.

*Facts and Procedural History*

**{¶2}** On October 27, 2022, Hammond was indicted on one count of Possession of a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.11(A)/(C)(11)(a). [Docket Entry No. 1]. On November 8, 2022, the trial judge issued an order for removal to have Hammond transported from the Franklin County Community Based Corrections Facility ["CBCF"] in Columbus, Ohio to Licking County for his arraignment on the charge. [Docket Entry No. 8].

**{¶3}** Hammond was arraigned in the Licking County Court of Common Pleas on November 21, 2022. At his arraignment, Hammond's attorney told the magistrate that Hammond was "currently in a lock down facility in Franklin County. He was placed there by his PRC officer." T. *Arraignment*, Nov. 21, 2022 at 4. Hammond's attorney informed the magistrate that Hammond would likely remain in that facility until February. Id. Hammond's attorney asked the trial judge to fashion bond in the present case so as to allow Hammond to return to Franklin County to complete the CBCF program. Id. The trial judge agreed and set bond at $50,000, cash or surety. The magistrate advised Hammond that upon his release from the program, Hammond would be returned to Licking County. Id.

**{¶4}** On February 8, 2023, the trial judge issued an order for removal to have Hammond transported from the CBCF in Columbus, Ohio to Licking County for his jury trial. [Docket Entry No. 26].

{¶5}　Hammond's jury trial commenced on February 15, 2023.

**On September 25, 2022, officers at the Licking County Jail responded to an outbreak of fentanyl overdoses, impacting several inmates**

{¶6}　Sergeant Joby Bell an employee at the Licking County Jail, confirmed that multiple inmates had suffered from overdoses of fentanyl on September 25, 2022. T. at 124. Hammond, who was incarcerated at the facility at the time, was one of the inmates impacted.

{¶7}　The Licking County Sheriff's Office investigated. According to Detective Kyle Boerstler of the Licking County Sheriff's Office, another inmate, E. T. brought the fentanyl into the jail. T. at 93; 114. E.T. provided the drugs to Hammond. Detective Boerstler testified that surveillance video from the jail showed E.T. received a piece of paper from another inmate, placed it on a bed, and that Hammond then retrieved it. T. at 94; State's Exhibit 1A.

{¶8}　Sergeant Joby Bell testified that as multiple inmates were overdosing on fentanyl, he was monitoring the inmates gathered in Module C of the jail. T. at 128. Sergeant Bell testified that he saw Hammond, who in the officer's opinion, looked "a little off." T. at 128. He described Hammond as pale, sweating, grimacing, and looking upset. Id. State's Exhibit 1F. Sergeant Bell approached Hammond to ask if he was alright. Id. Hammond told the officer that he was "fine." Id. at 129. The pair fist bumped and the sergeant began to walk away. State's Exhibit 1F. As he looked back, Sergeant Bell testified that he could see Hammond "had his left pinkie up to his face and it looked like he was snorting something…" T. at 130. Sergeant Bell ran over to where Hammond was seated on the bunk, and grabbed his left wrist. Id.; State's Exhibit 1F. Sergeant Bell

noticed that Hammond had powder on his pinkie, and he had a Hi-C drink packet in his right hand, which he dropped to the floor. Sergeant Bell grabbed what he described as a "makeshift envelope" from Hammond's left hand. T. at 130 - 131. He also retrieved the Hi-C packet from the floor.

{¶9}   Officer Kodie Hutchinson testified that he assisted Sergeant Bell in responding to Hammond. T. at 143. Officer Hutchinson testified that he observed powder on Hammond's shirt, chest, mustache, and legs. Id. State's Exhibit 1F. Officer Hutchinson testified that Hammond attempted to wipe some of the powder off. T. at 145. Officer Hutchinson observed white speckles of powder on Hammond's shirt and pants as his clothes were cut off. Id. at 146.

{¶10}  Mark Hiatt testified that he is the lab director of the Central Ohio Regional Crime Lab. T. at 149. Hiatt examined the folded paper containing a white powder that was taken from Hammond's hand, and the Hi-C drink packet. Id. at 152; State's Exhibit 6. The folded paper was found to contain 0.1117 grams of fentanyl. Id.

## Hammond takes the witness stand

{¶11}  Hammond testified that he did not receive fentanyl from anyone at the Licking County jail. T. at 167. He claimed that he did not knowingly ingest fentanyl at the Licking County jail. Hammond testified that he was contaminated by accident when he picked up a piece of paper that another inmate had put down. T. at 167-168. Hammond denied having anything in his hands during the events that day. Id. at 168. Hammond further testified that he does not remember anything else until he woke up on the ground. Id. at 169-171. Hammond agreed that the video surveillance tapes showed he was under the influence of fentanyl. Id. at 173- 174; State's Exhibit 1F. Hammond testified that he

had been unintentionally contaminated by the fentanyl at the jail, but denied knowingly using or possessing it. Hammond was treated at the hospital for what he believed to be a fentanyl overdose. T. at 176: State's Exhibit 7.

{¶12} At the conclusion of the evidence and after instructions by the trial judge, the jury found Hammond guilty on the sole count contained in the Indictment. On February 15, 2023, the trial court sentenced Hammond to the maximum possible sentence of 1 year in prison. Hammond was not given any jail time credit toward his sentence.

*Assignments of Error*

{¶13} Hammond raises two Assignments of Error,

{¶14} "I. APPELLANT'S CONVICTION FOR POSSESSION OF A FENTANYL-RELATED COMPOUND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} "II. THE TRIAL COURT'S SENTENCE OF APPELLANT WAS CONTRARY TO LAW FOR FAILING TO PROPERLY CALCULATE APPELLANT'S JAIL-TIME CREDIT AS REQUIRED UNDER R.C. 2967.191, IN VIOLATION OF APPELLANT'S RIGHT TO EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 2 OF THE OHIO CONSTITUTION."

I.

{¶16} In his First Assignment of Error, Hammond maintains that his conviction for Possession of a Fentanyl-Related Compound is against the manifest weight of the evidence. Specifically, he argues his ingestion of fentanyl was accidental.

**Standard of Appellate Review – Manifest Weight**

{¶17}  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

{¶18}  Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, *supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541(1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652(1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶25, citing *Thompkins.*

{¶19}  Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and

every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

**{¶20}** As one Court has explained,

When faced with a manifest weight of the evidence challenge, we must consider whether the state "carried its burden of persuasion" before the trial court. *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, ¶ 26; *see State v. Martin*, Slip Opinion No. 2022-Ohio-4175, ¶ 26. Unlike the burden of production, which concerns a party's duty to introduce enough evidence on an issue, the burden of persuasion represents a party's duty to convince the factfinder to view the facts in his or her favor. *Messenger* at ¶ 17. Therefore, in order for us to conclude that the factfinder's adjudication of conflicting evidence ran counter to the manifest weight of the evidence—which we reserve for only the most exceptional circumstances—we must find that the factfinder disregarded or overlooked compelling evidence that weighed against conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387-388, 678 N.E.2d 541 (1997). We accordingly sit as a "thirteenth juror" in this respect. Id.

*State v. Gibson*, 1st Dist. Hamilton No. C-220283, 2023-Ohio-1640, ¶ 8.

**{¶21}** Further, to reverse a jury verdict as being against the manifest weight of the evidence, a unanimous concurrence of all three judges on the court of appeals panel

reviewing the case is required pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution. *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 2-4, *citing Thompkins* at paragraph four of the syllabus.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered*

{¶22}  Hammond was convicted of one count of Possession of a Fentanyl-Related Compound. R.C. 2925.11 provides, "(A) No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

{¶23}  R.C. 2901.22 defines "knowingly" as follows:

(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

{¶24}  Whether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself."  *State v. Johnson*, 56 Ohio St.3d 35, 38,381 N.E.2d 637(1978) *citing State v. Huffman,* 131 Ohio St. 27, 1 N.E.2d 313(1936):  *State v. Rojas*, 64 Ohio St.3d 131, 139, 592 N.E.2d 1376(1992); State *v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695(1st Dist. 2001). (Footnote omitted.)  Thus, "[t]he tests for whether a defendant acted knowingly is a subjective one, but it is decided on objective criteria."  Id. *citing State v. Adams*, 4th Dist. Ross No. 94 CA 2041, 1995 WL 360247(June 8, 1995) and *State v.*

*Paidousis*, 10th Dist. Franklin No. 00AP–118, 2001 WL 436079 (May 1, 2001). *See also, State v. Butler*, 5th Dist. Holmes No. 2012–CA–7, 2012–Ohio–5030, ¶ 25.

**{¶25}** Hammond concedes that the state presented sufficient evidence on each element of the crime of drug possession; however, Hammond argues that the jury should have found that any contact he had with fentanyl at the jail was not knowing; rather it was accidental.

**{¶26}** Accident is defined as a "mere physical happening or event, out of the usual order of things and not reasonably (anticipated) (foreseen) as a natural or probable result of a lawful act." 4 Ohio Jury Instructions 75, Section 411.01(2). Moreover, "[a]n accidental result is one that occurs unintentionally and without any design or purpose to bring it about." Id. *State v. Taylor,* 5th Dist. Richland No. 2005-CA-0112, 2006-Ohio-4064 at ¶ 37; *State v. Harris,* 5th Dist. Richland No. 2007CA0059, 2008-Ohio-2681, ¶116. "By definition, the term 'knowingly' means that the defendant's conduct was not an accident." *State v. Chambers*, 4th Dist. Adams No. 10CA902, 2011-Ohio-4352, ¶ 48.

**{¶27}** Evidence was presented that Sergeant Bell noticed that Hammond had powder on his pinkie and it appeared that he was snorting something. T. at 131. Officer Kodie Hutchinson noticed that Hammond had powder on his mustache, as well as his shirt and pants. T. at 143; 145-146. Sergeant Bell took a makeshift paper envelope from Hammond's hand which was later shown to have Fentanyl on it. T. at 130-131, 134; 154-55; State's Exhibit 4-D [picture]; State's Exhibit 8-A [envelope with powder].

**{¶28}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such

inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992).

{**¶29**}   The jury was able to see and judge for themselves Hammond's actions via the surveillance videos. State's Exhibit 1-A through 1-F. The jury heard the state's witnesses and Hammond testified and be cross-examined. Thus, a rational basis exists in the record for the jury's decision.

{**¶30**}   We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001), *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Based upon the entire record in this matter we find Hammond's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Hammond's guilt.

{¶31} Upon review of the entire record, weighing the evidence and all reasonable inferences as a thirteenth juror, including considering the credibility of witnesses, we cannot reach the conclusion that the trier of facts lost its way and created a manifest miscarriage of justice. We do not find the jury erred when it found Hammond guilty. The fact that the jury chose not to believe the testimony of Hammond does not, in and of itself, render his convictions against the manifest weight of the evidence. The fact that the state may have relied on circumstantial evidence in proving Hammond's guilt does not make his convictions any less sound. The state presented testimony and evidence from which the jury found all the essential elements of the offense proven beyond a reasonable doubt.

{¶32} Upon careful consideration of the record in its entirety, we do not find that the jury disregarded or overlooked compelling evidence that weighed against conviction.

{¶33} Hammond's First Assignment of Error is overruled.

II.

{¶34} In his Second Assignment of Error, Hammond argues that the trial court failed to properly calculate Hammond's jail-time credit for the days he was incarcerated prior to trial based on the charge in this case.

**Standard of Appellate Review**

{¶35} "'When a court's judgment is based on an erroneous interpretation of the law, an abuse-of-discretion standard is not appropriate. *See Swartzentruber v. Orrville Grace Brethren Church,* 163 Ohio App.3d 96, 2005-Ohio-4264, 836 N.E.2d 619, ¶ 6; *Huntsman v. Aultman Hosp.,* 5th Dist. No. 2006 CA 00331, 2008-Ohio-2554, 2008 WL 2572598, ¶ 50.' *Med. Mut. of Ohio v. Schlotterer,* 122 Ohio St.3d 181, 2009-Ohio-2496,

909 N.E.2d 1237, ¶ 13." *State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶6.

**{¶36}** Because the assignment of error involves the interpretation of a statute, which is a question of law, we review the trial court's decision de novo. *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13; *Accord, State v. Pariag,* 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9; *Hurt v. Liberty Township, Delaware County, OH,* 5th Dist. Delaware No. 17 CAI 05 0031, 2017-Ohio-7820, ¶ 31.

**Issue for Appellate Review**: *Whether Hammond was entitled to jail time credit*

**{¶37}** With respect to jail-time credit, the Ohio Supreme Court has instructed the courts that,

> The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions.

> * * *

> "The Equal Protection Clause requires that *all* time spent in any jail prior to trial and commitment by [a prisoner who is] unable to make bail because of indigency *must* be credited to his sentence." (Emphasis sic.) *Workman v. Cardwell* (N.D. Ohio 1972), 338 F.Supp. 893, 901, *vacated in part on other grounds* (C.A.6, 1972), 471 F.2d 909. *See also White v. Gilligan* (S.D. Ohio 1972), 351 F.Supp. 1012.

> This principle is codified in Ohio at R.C. 2967.191, which states that "[t]he department of rehabilitation and correction shall reduce the stated

prison term of a prisoner * * * by the total number of days that the prisoner

was confined for any reason arising out of the offense for which the prisoner

was convicted and sentenced, including confinement in lieu of bail while

awaiting trial * * *."

*State v. Fugate,* 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, ¶ 7-9.

{¶38}   Although it is the department of rehabilitation and correction's duty to reduce the term of incarceration by the number of days served prior to sentencing, it is the responsibility of the sentencing court to properly calculate the amount of days for which such credit may be extended. *State ex rel. Corder v. Wilson*, 68 Ohio App.3d 567, 589 N.E.2d 113(1991); *State v. Barkus,* 5th Dist. No. 2002 CA 0052, 2003-Ohio-1757 at ¶ 12; R.C. 2929.19(B)(2)(g)(i). R.C. 2967.191 requires that an offender's prison term be reduced "by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced [.]"

{¶39}   R.C. 2949.12, which addresses the calculation of time, conveyance, and incarceration assignments of convicted felons exclusively, is also applicable here. This section states that the prisoner's sentencing order should also reflect, "* * * pursuant to section 2967.191 of the Revised Code * * * the total number of days, if any, that the felon was confined *for any reason* prior to conviction and sentence." (Emphasis added).

{¶40}   A defendant is no longer required to contest a trial court's calculation of his jail-time credit in a direct appeal of his conviction; even if no appeal is pursued, the issue can still be asserted in a post-judgment motion. *State v. Smith*, 11th Dist. Lake No. 2016–L–107, 2017–Ohio–4124, ¶ 11. Pursuant to R.C. 2929.19(B)(2)(g)(iii), an offender can file a motion to correct an error in determining jail-time credit "at any time after sentencing"

and the sentencing court has authority to correct any error in determining jail-time credit that was "not previously raised at sentencing." *State v. Thompson,* 147 Ohio St.3d 29, 2016-Ohio-2769, 59 N.E.3d 1264, ¶12; *State v. Thompson,* 8th Dist. Cuyahoga No. 102326, 2015-Ohio-3882, ¶23; *State v. Inboden,* 10th Dist. Franklin Nos. 14AP-312; 14AP-317, 2014-Ohio-5762, ¶8.

{¶41} Calculating jail time credit when a defendant is held on multiple charges can be challenging. In *State v. Olmstead*, this court observed,

> The Court of Appeals for Franklin County has recognized the difficulty in calculating jail-time credit when a defendant had both a probation violation and a new criminal charge, "[a]lthough the principle of crediting time served seems fairly simple on its face, in practice, it can be complicated when, inter alia, the defendant is charged with multiple crimes committed at different times, or when the defendant is incarcerated due to a probation violation. Generally speaking, days served following arrest on a probation violation can only be credited toward the sentence on the original charge i.e., the one for which he was sentenced to probation. In addition, a defendant is not entitled to jail-time credit for any period of incarceration arising from facts that are separate or distinguishable from those on which the current (or previous) sentence was based. See, e.g., *State v. Smith* (1992), 71 Ohio App.3d 302, 304; *State v. Mitchell,* Lucas App. No. L-05-1122, 2005-Ohio-6138, at ¶ 8. A sentence for any offense committed after the offense on which the defendant's probation is based is not entitled to jail-time credit. *Id.; State ex rel. Gillen v. Ohio Adult Parole Auth.* (1995), 72

Ohio St.3d 381; *State v. Peck,* Franklin App. No. 01AP-1379, 2002-Ohio-3889. This is an important distinction because a probation violation usually occurs when the defendant commits a new crime. For example, a first offender is convicted of petty theft pursuant to a shoplifting incident. If the court sentences that defendant to six months in jail, and suspends the sentence in lieu of a period of one years [sic] probation, the defendant will go free. During the months that follow, if that same defendant is arrested for OVI, he will likely not be permitted to be released on bail because the jail will place a probation hold on the prisoner. Irrespective of the OVI charge, which would ordinarily allow the defendant to post bail and be released, under these circumstances, the defendant would have to be taken before the trial judge who sentenced him on the theft charge. Whatever time the defendant spent in jail between his arrest and the probation violation hearing could only be credited towards the sentence for the theft conviction." *State v. Chafin,* Franklin App. No. 06AP-1108, 2007-Ohio-1840 at ¶ 9.

5th Dist. No. 2007-CA-119, 2008-Ohio-5884, ¶19.

**{¶42}** The days, which Hammond contends he should have received credit for, were a sentence for an offense separate and apart from the one for which the trial court imposed a felony sentence in this case. Hammond did receive credit for all days on the post-release control violation case in that case. That sentence was nearly completed before Hammond was sentenced under the felony convictions.

**{¶43}** In the case at bar, the trial judge ordered Hammond returned from the CBCF in Franklin County by entry filed November 9, 2022. [Docket Entry No. 8]. Hammond was returned to Licking County from Franklin County on November 18, 2022. [Docket Entry No. 9]. Hammond was arraigned on November 21, 2022. He was then returned to the CBCF in Franklin County. We know this to be true because the trial judge ordered Hammond returned for his trial from the CBCF in Franklin County by entry filed February 8, 2023. [Docket Entry No. 26]. Hammond was returned to Licking County from Franklin County on February 13, 2023. [Docket Entry No. 27]. Hammond's jury trial commenced on Tuesday, February 15, 2023. The jury returned a guilty verdict that day. T. at 214-215. Prior to sentencing, Hammond told the trial judge, "Like she said, I completed the CBCF on Friday. I get the certificate Friday for departure." T. at 217.

**{¶44}** Under the foregoing analysis, Hammond cannot receive double jail time credit for confinement in this case while serving the sentence imposed on the charges in the CBCF in Franklin County for the post-release control violation. Such sentence arose out of an unrelated case.

**{¶45}** Hammond's Second Assignment of Error is overruled.

{¶46} The judgment of the Licking County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Baldwin, J., concur